626 S.E.2d 34

Sharon K. PEEK, M.D., Respondent,

v.

SPARTANBURG REGIONAL HEALTHCARE
SYSTEM, Appellant.

No. 4064.

Court of Appeals of South Carolina.

Heard Nov. 10, 2005.
Decided Dec. 19, 2005.
Rehearing Denied Feb. 16, 2006.

452

Perry D. Boulier, of Spartanburg, for Appellant.

James C. Cothran, Jr., of Spartanburg, for Respondent.

HEARN, C.J.:

This is an appeal from an order of the trial court enjoining Spartanburg Regional Healthcare System (the Hospital) from terminating the staff privileges of anesthesiologist Sharon Peek until the merits of her case can be adjudicated. We affirm.

## FACTS

Peek is a licensed anesthesiologist.[1] She has maintained staff privileges at the Hospital for almost fourteen years. On January 30, 2004, general counsel for the Hospital informed Peek that pursuant to a prospective agreement between the Hospital and Foothills Anesthesia Consultants, P.C. (Foothills), Peek would lose her staff privileges at the Hospital unless she was employed by Foothills. Although Peek did not wish to work at Foothills, she nevertheless sought employment there. Foothills declined to employ her.

On February 1, 2004, the Hospital entered into an "Anesthesiology Services Agreement" with Foothills (2004 Agreement), which provided that Foothills "shall be the exclusive provider of Services" at the Hospital. This meant that core anesthesia services—essentially, all anesthesia services outside of chronic pain management—could be performed only by employees of Foothills. Accordingly, under the 2004 Agreement, if Foothills did not employ Peek, she could not practice core anesthesia services at the Hospital.

On February 24, 2004, Peek was asked about her employment status with Foothills. Because Foothills did not employ Peek, the Hospital acted under the 2004 Agreement and terminated her core anesthesia privileges. On March 1, 2004, the President of the Hospital told Peek that effective March 6, 2004, she would no longer be allowed to perform any core anesthesia services at the Hospital. On March 5, 2004, a day

---

1. Peek's competency as a physician is not, and has never been, an issue in this case.

before Peek's privileges terminated, Peek sought a temporary restraining order to prevent the Hospital from revoking her core anesthesia privileges. Peek also brought a breach of contract action against the Hospital for failing to follow its own bylaws when it terminated Peek's privileges.

The trial court granted the temporary restraining order finding Peek made a prima facie showing she was entitled to protection under the Hospital bylaws. The Hospital appeals from this temporary injunction.

## STANDARD OF REVIEW

The grant or denial of an injunction by the trial court will not be reversed absent an abuse of discretion. *Gilley v. Gilley*, 327 S.C. 8, 11–12, 488 S.E.2d 310, 312 (1997); *Mail-Source, L.L.C. v. M.A. Bailey & Assocs.*, 356 S.C. 363, 367, 588 S.E.2d 635, 637–38 (Ct.App.2003). An abuse of discretion occurs when the decision of the trial court is unsupported by the evidence or controlled by an error of law. *Ledford v. Pa. Life Ins. Co.*, 267 S.C. 671, 675, 230 S.E.2d 900, 902 (1976); *County of Richland v. Simpkins*, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct.App.2002).

## LAW/ANALYSIS

The sole issue on appeal is whether the trial court abused its discretion in granting Peek injunctive relief until the merits of her case can be heard. We find no abuse of discretion.

"An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc.*, 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004). To obtain an injunction, the plaintiff must allege facts sufficient to constitute a cause of action for injunction and demonstrate the injunction is reasonably necessary to protect the legal rights pending in the litigation. *County of Richland v. Simpkins*, 348 S.C. 664, 669, 560 S.E.2d 902, 904 (Ct.App.2002). To establish a cause of action for injunction, the plaintiff must show "(1) it would suffer irreparable harm if the injunction is not granted; (2) it will likely succeed on the merits of the

·litigation; and (3) there is an inadequate remedy at law." *Scratch Golf,* 361 S.C. at 121, 603 S.E.2d at 908.

## A. Irreparable Harm

 The Hospital argues Peek has not suffered irreparable harm entitling her to injunctive relief because the harm she alleges can be remedied by monetary damages alone. We disagree.

 Whether "a wrong is irreparable, in the sense that equity may intervene, and whether there is an adequate remedy at law, are questions that are not decided by narrow and artificial rules." *Kirk v. Clark,* 191 S.C. 205, 211, 4 S.E.2d 13, 16 (1939). Before granting an injunction, the trial court should balance the equities: the court should look at the particular facts of each case and the equities of each party and determine which side, if any, is more entitled to equitable relief. *MailSource, L.L.C. v. M.A. Bailey & Assocs.,* 356 S.C. 363, 368, 588 S.E.2d 635, 638 (Ct.App.2003). The only purpose of an injunction is to preserve the status quo to avoid possible irreparable injury to a party pending litigation. *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 601, 553 S.E.2d 110, 121 (2001); *MailSource,* 356 S.C. at 368, 588 S.E.2d at 638.

 The trial court found that because Peek was a physician with a private practice, she would suffer irreparable harm while her case against the Hospital was litigated, and that as between Peek and the Hospital, the equities favored Peek. The record supports this conclusion. Peek has lived and practiced anesthesiology in the Spartanburg area for fourteen years. During this time Peek built a patient referral base, which fueled her professional practice. The loss of privileges at the Hospital would lead to the loss of her patient referral base, which would, in turn, lead to the loss of her professional practice. The complete loss of a professional practice can be an irreparable harm.[2] Accordingly, we find the trial court did

---

**2.** Other appellate courts have upheld injunctive relief to prevent the loss of a business or business goodwill. *District of Columbia v. E. Trans–Waste of Md., Inc.,* 758 A.2d 1, 15 (D.C.2000) ("While economic loss does not, in and of itself, constitute irreparable harm, such harm will be found if economic loss threatens the very existence of [plaintiff's] business."); *Campbell Inns, Inc. v. Banholzer, Turnure & Co.,* 148 Vt. 1,

not abuse its discretion when it found Peek would suffer irreparable harm if the status quo was not maintained.

## B. Success on the Merits

The Hospital next argues Peek cannot succeed on the merits of the underlying case because the 2004 Agreement is an enforceable exclusive contract. We disagree.

When seeking a preliminary injunction, the plaintiff need not prove an absolute legal right; the plaintiff need only present "a fair question to raise as to the existence of such a right." *Williams v. Jones,* 92 S.C. 342, 347, 75 S.E. 705, 710 (1912). The determination of whether to grant an injunction should not be based on the merits of the underlying case except insofar as the merits may assist the trial court in determining whether a prima facie showing has been made. *MailSource,* 356 S.C. at 368, 588 S.E.2d at 638 (citing *Transcon. Gas Pipe Line Corp. v. Porter,* 252 S.C. 478, 481, 167 S.E.2d 313, 315 (1969)). "Once a prima facie showing has been made entitling the plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits." *Helsel v. City of North Myrtle Beach,* 307 S.C. 29, 32, 413 S.E.2d 824, 826 (1992) ("[I]t would have been improper for the hearing judge who issued the temporary injunction to make a finding upon the facts in such a manner as to affect the merits of the case.").

Once the trial court determined Peek made a prima facie showing she was entitled to protection under the Hospital bylaws, the trial court was not required to determine whether the 2004 Agreement was an enforceable exclusive contract because such a finding would affect the merits of the case. Therefore, the trial court did not abuse its discretion in deciding Peek would likely succeed on the merits.

---

527 A.2d 1142, 1146 (1987) ("The potential loss of a business satisfies the irreparable harm requirement for the issuance of an injunction."); *IAC, Ltd. v. Bell Helicopter Textron, Inc.,* 160 S.W.3d 191, 200 (Tex.App. 2005) ("Loss of business goodwill or loss that is not easily calculated in pecuniary terms is sufficient to show irreparable injury for purposes of obtaining a temporary injunction.").

## C. Inadequate Remedy at Law

■ Finally, the Hospital argues Peek had an adequate remedy at law in the form of monetary damages. We disagree.

■ Again, the purpose of an injunction is the preservation of the status quo. *MailSource*, 356 S.C. at 368, 588 S.E.2d at 638. "A temporary injunction is used to preserve the subject of controversy in the condition which it is at the time of the [o]rder until opportunity is offered for full and deliberate investigation and to preserve the existing status during litigation." *Id.* As explained above, the trial court correctly found that if Peek lost her privileges at the Hospital, her professional practice and, by extension, her career would be lost long before her claims against the Hospital were adjudicated. Furthermore, Peek, who both sides agree is a competent and capable anesthesiologist, would lose expertise if she were not otherwise allowed to exercise her privileges at the hospital while this case is pending, and therefore her future ability to practice anesthesiology would be compromised. While courts do often award monetary damages when a plaintiff can no longer work, such damages are usually the only possible remedy and serve to make the plaintiff as whole as possible under the circumstances. Here, monetary damages are not the only option, and injunctive relief is a better remedy because it would allow Peek to retain both her patient base and her expertise while also retaining her income. Therefore, we find the trial court did not abuse its discretion in finding Peek had an inadequate remedy at law.

## CONCLUSION

For the forgoing reasons, the order of the trial court enjoining the Hospital from revoking Peek's privileges until the merits of her case can be heard is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.