560 S.E.2d 902

**COUNTY OF RICHLAND, Appellant,**

v.

**Willie D. SIMPKINS, d/b/a Mr. Lucky's, Respondent.**

**No. 3457.**

Court of Appeals of South Carolina.

Heard Jan. 10, 2002.

Decided March 4, 2002.

issuance of an arrest warrant, which would have precluded bond forfeiture as a final disposition.

Bradley T. Farrar, of Richland County Attorney's Office, of Columbia, for appellant.

Harry T. Heizer, Jr., of Columbia, for respondent.

PER CURIAM:

Richland County (the County) filed this action seeking preliminary and permanent injunctions against Willie D. Simpkins, doing business as Mr. Lucky's. While the action was pending, the County moved to enjoin Simpkins from operating Mr. Lucky's until the final adjudication of the merits of the action. The trial court denied the motion for a preliminary injunction. The County appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

The County adopted the Sexually Oriented Businesses Ordinance (the ordinance) effective August 1, 1987.[1] In its complaint, the County alleged numerous violations of the ordinance occurred at Mr. Lucky's and the County thus requested injunctive relief for the abatement of the alleged unlawful land use. In its separate motion for a preliminary injunction pending the resolution of the action, the County requested an order preliminarily enjoining Simpkins from unlawful land use. The County asserted in its motion: "[Mr. Lucky's] will not be put out of business; he must merely change his business."

---

1. Richland County Code §§ 26–201 to –216.

The County supported its pleadings with numerous affidavits and citations alleging Simpkins was unlawfully operating a sexually-oriented business (SB) in violation of the ordinance. Jack T. Bradley, Deputy Sheriff of the Richland County Sheriff's Department, provided an affidavit accompanied by copies of approximately eighteen incident reports derived from incidents which occurred in and around Mr. Lucky's between July 10, 1997, and June 25, 1998. The reported citations ranged from larceny and vandalism to sex and narcotics offenses.

In his return to the motion for preliminary injunctive relief and his answer and accompanying affidavit, Simpkins acknowledged the County may seek injunctive relief against an SB under the ordinance but specifically denied Mr. Lucky's was an SB or had ever been adjudicated an SB.

Thereafter, the County filed an amended notice and motion for a preliminary injunction. In the amended motion, the County sought much broader relief than the abatement of unlawful activity, as requested in the complaint. The County requested a preliminary injunction, pending a final hearing on the merits, restraining Simpkins from any operation of Mr. Lucky's. The amended motion included additional affidavits of investigating officers and citations for several incidents occurring between September 9, 1997, and January 31, 1998. These citations alleged Simpkins was operating an SB within 1,000 feet of a residential community and operating an SB without a license.[2]

At a hearing on the County's motion, Simpkins argued he was not operating an SB. Simpkins asserted he relied on the language in a prior consent order, entered into between the County and Vickie S. Watts, d/b/a The Trophy Room, in October 1992. This consent order detailed, with specific examples, how a business could adequately clothe its performers to avoid being classified as an SB.

---

2. Richland County Code § 26–212(c) provides: "A person commits a misdemeanor if he operates or causes to be operated a sexually oriented business within one thousand (1,000) feet of: (1) A church; (2) A public or private elementary or secondary school; (3) A boundary of any residential district; (4) A public park adjacent to any residential district; [or] (5) The property line of a lot devoted to residential use."

The County argued that a governmental entity need not show the traditional elements for temporary injunctive relief. It requested that Mr. Lucky's be closed until the case proceeded on the merits. Simpkins acknowledged he was already enjoined from violating the ordinance but disagreed that the County could close Mr. Lucky's pending the final hearing. Simpkins argued that the intent of a preliminary injunction is to maintain the status quo, and that the continued, lawful operation of Mr. Lucky's is the status quo. Simpkins further asserted the County was prematurely attempting to enjoin Mr. Lucky's from all business based merely on allegations that had yet to be adjudicated. He argued the County must prove the alleged violations before it is entitled to seek an injunction closing the business.

The trial court held a hearing on the County's motion for a preliminary injunction closing Mr. Lucky's. The court found that even if, as the County argued, it need not show irreparable harm, nor the lack of an adequate remedy at law, the County was not entitled to an order requiring Mr. Lucky's to cease doing business. The court recognized the purpose of a preliminary injunction is to preserve the status quo during the pendency of the action. The court found "the equities between the parties in this case would become drastically unbalanced if Mr. Lucky's was ordered to cease operation on a temporary basis prior to a full hearing on the merits." The court also expressed concern that the County's requested relief in its motion was broader than that requested as ultimate relief. The court recognized Simpkins' was willing to consent to an injunction against Mr. Lucky's restraining it from any further violations of the ordinance. The trial court denied the County's request for temporary injunctive relief. After hearing further argument, the court also denied the County's subsequent motion to reconsider. The County appeals.

## STANDARD OF REVIEW

The decision whether to grant or deny an injunction is ordinarily left to the sound discretion of the trial court. *Metts v. Wenberg*, 158 S.C. 411, 417, 155 S.E. 734, 736 (1930). An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law.

*Ledford v. Pennsylvania Life Ins. Co.*, 267 S.C. 671, 675, 230 S.E.2d 900, 902 (1976).

## DISCUSSION

■ The County argues the trial court applied the wrong standard in analyzing its entitlement to preliminary injunctive relief and further argues even under the general standard for an injunction, it was entitled to relief. We find no reversible error.

■ A plaintiff's entitlement to an injunction requires the complaint to allege facts sufficient to constitute a cause of action for injunction while also showing an injunction must be reasonably necessary to protect the legal rights of the plaintiff pending in the litigation. *Transcont'l Gas Pipe Line Corp. v. Porter*, 252 S.C. 478, 480–81, 167 S.E.2d 313, 315 (1969). Generally, to obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and an inadequate remedy at law. *Roach v. Combined Util. Comm'n*, 290 S.C. 437, 442, 351 S.E.2d 168, 170 (Ct.App.1986).

■ In the recent decision of *City of Columbia v. Pic–A–Flick Video, Inc.*, 340 S.C. 278, 531 S.E.2d 518 (2000), our supreme court articulated a lesser standard where the injunction sought is specifically authorized by statute and the party seeking the injunction is a governmental entity. "In order for a city to get an injunction [which is specifically authorized by statute] for a zoning violation they must show: (1) that it has an ordinance covering the situation; and (2) that there is a violation of that ordinance." *Pic–A–Flick*, 340 S.C. at 282, 531 S.E.2d at 521 (citing 42 Am.Jur.2d *Injunctions* § 38 (1969)). "In such circumstances, no showing of irreparable harm need be made by the party seeking the injunction, nor must the court consider whether the injunction is in the public interest." 42 Am.Jur.2d *Injunctions* § 23, at 595 (2000). *See Pic–A–Flick*, 340 S.C. at 284, 531 S.E.2d at 521 (holding a municipality need not show negative secondary effects in order to enforce adult zoning provisions).

Here, the County is authorized by statute to seek an injunction:

> In case a building, structure, or land ... is ... used in violation of any ordinance adopted pursuant to this chapter, the zoning administrator or other appropriate administrative officer ... may in addition to other remedies, institute injunction ... or other appropriate action or proceeding to ... abate the violation. ...

S.C.Code Ann. § 6–29–950(A) (Supp.2001). Likewise, the ordinance provides: "[a] person who operates or causes to be operated a sexually oriented business without a valid permit and/or license or in violation of ... this ordinance is subject to a suit for injunction as well as prosecution for criminal violations." Richland County Code § 26–216.

In *Pic–A–Flick*, as in this case, the City of Columbia sought a preliminary injunction against Pic A Flick to enforce its sexually-oriented businesses ordinance. *Pic–A–Flick*, 340 S.C. at 280, 531 S.E.2d at 519. Unlike in the present action, however, the issue in *Pic–A–Flick* was not whether the ordinance applied; rather, it was whether the City's interpretation of its ordinance was valid. The applicable ordinance classified adult video stores by whether a "principal business purpose" of the store was the sale or rental of the specified merchandise. The video store owner in *Pic–A–Flick* conceded the store rented and sold videos defined as restricted material under the City ordinance. *Id.* at 281, 531 S.E.2d at 520. The owner denied, however, that the sale and rental of the movies was a principal business purpose of the store. *Id.* The term "principal business purpose" was not defined in the ordinance. *Id.* at 283, 531 S.E.2d at 521. The supreme court found this ambiguous phrase made it unlikely that the City would prevail in proving Pic A Flick violated the ordinance. *Id.* at 284, 531 S.E.2d at 522.

By contrast, Simpkins argues Mr. Lucky's does not operate in violation of the ordinance. He asserts the entertainers clothe enough of their anatomy to avoid violating the ordinance. Even under the *Pic–A–Flick* standard, the County must prove a violation to entitle them to an injunction. We find the County's proffer of violations, mere citations and accompanying affidavits, is insufficient. The citations remain unadjudicated. They are merely evidence of violations, not proof thereof. This action would be postured differently if the

citations had resulted in criminal convictions prior to the County's request for an injunction.

■■■ We do not read *Pic–A–Flick* as changing the purpose behind injunctive relief. The trial court, without the benefit of *Pic–A–Flick,* was correct in considering the inherent purpose behind the equitable remedy of an injunction: to preserve the status quo. *See Powell v. Immanuel Baptist Church,* 261 S.C. 219, 221, 199 S.E.2d 60, 61 (1973) ("[T]he sole purpose of a temporary injunction is to preserve the status quo....."). "[A] temporary injunction is [used] to preserve the subject of controversy in the condition which it is at the time of the Order until opportunity is offered for full and deliberate investigation and to preserve the existing status during litigation...." *County Council of Charleston v. Felkel,* 244 S.C. 480, 483–84, 137 S.E.2d 577, 578 (1964) (citations omitted). "A temporary injunction is made without prejudice to the rights of either party pending a hearing on the merits, and when other issues are brought to trial, they are determined without reference to the temporary injunction." *Helsel v. City of N. Myrtle Beach,* 307 S.C. 29, 32, 413 S.E.2d 824, 826 (1992). Thus, we are guided by the general principles of equity:

> First, the equities of both sides are to be considered, and each case must be decided on its own particular facts. Second, the court of equity must "balance the equities" between the parties in determining what if any relief to give. The equities on both sides must be taken into account.

*Foreman v. Foreman,* 280 S.C. 461, 464–65, 313 S.E.2d 312, 314 (Ct.App.1984) (citations omitted).

Here, Simpkins acknowledges that Mr. Lucky's must operate within the law. Closing Mr. Lucky's without first adjudicating the merits of the citations would not preserve the parties' positions pending the final hearing on the underlying merits of the actions.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

CURETON, STILWELL and SHULER, JJ., concur.